# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
## EASTERN DIVISION

---

**TERRY PRIESTER, JR., a minor,**                                    **PLAINTIFFS**
**by and through his parents, TERRY**
**PRIESTER, SR. and EVE PRIESTER**

**V.**                                                         **CASE NO. 1:03CV90**

**STARKVILLE SCHOOL DISTRICT;**
**PRINCIPAL LEON CLARK, individually and in his official capacity;**
**COACH BILL LEE, individually and in his official capacity;**
**SPENCE RODMAN, individually and in his official capacity;**
**COACH JOHN PATTON, individually and in his official capacity;**
**TATE FISCHER, individually and in his official capacity;**
**TONY BUCKHALTER, individually and in his official capacity;**
**BILL COOK, individually and in his official capacity; and**
**DANNY CARLISLE, individually and in his official capacity**       **DEFENDANTS**

---

## MEMORANDUM OPINION

This cause comes before the Court on a motion for summary judgment [39-1] filed by the defendants in the above-styled case. The Court has reviewed the briefs and exhibits and is prepared to rule.

The plaintiff is Terry Priester, Jr. ("Terry") who, at the time of the incidents underlying this lawsuit, was a junior at Starkville High School in Starkville, Mississippi. Terry is also represented by and through his parents, Terry, Sr. and Eve. The remaining defendants include the Starkville School District ("the District") through Starkville Superintendent Dr. Larry Box; Starkville High School Principal Leon Clark; and seven coaches and assistant coaches who have been sued both individually and in their official capacities. The Court has previously granted summary judgment motions filed by two other defendants named Heath Grant and Lance Fremin who were students at Starkville High School.

This suit arises from an incident in which Grant, Fremin and other unidentified student athletes physically assaulted Terry in the Starkville High School's locker room following a football game which took place on November 23, 2001. Terry had transferred to Starkville High School from the Lowndes County School District earlier that semester, and after an investigation of the assault by Coach Bill Lee, Terry was suspended from the football team and later had his transfer revoked by the Starkville School Board. The grounds given for the revocation were Terry's refusal to heed a coach's instructions to remain in an office instead of going back out to confront his attackers, Terry's act of repeatedly shoving Coach John Patton, and allegations that Terry threatened to kill other students. The Oktibbeha County Chancery Court later rescinded the revocation, concluding that it amounted to a "de facto" expulsion for which Terry was denied due process. Nevertheless, Terry did not return to Starkville High School, and his parents enrolled him in a different school instead.

Terry subsequently filed his initial complaint against a number of persons, both individually and in their official capacities, on February 14, 2003. On June 30, 2003, Terry filed his First Amended Complaint which added Grant and Fremin to the list of defendants. On September 11, 2003, Terry moved for permission to file his Second Amended Complaint, and the magistrate subsequently granted this motion, giving Terry eleven days in which to file his amended complaint. However, Terry did not filed a Second Amended Complaint with the Clerk's Office, and no such complaint was ever docketed. As the time Terry was given for filing a Second Amended Complaint has long since run, the Court considers the First Amended Complaint to be controlling. Under that complaint, Terry raises claims under 42 U.S.C. § 1981, 1983, 1985 and 1986, as well as Title VI of the Civil Rights Act of 1964 as amended by 42 U.S.C. § 2000(d). The Court has since granted Grant

and Fremin's summary judgment motion and now turns to the motion submitted by the remaining defendants.[1]

## ANALYSIS

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). An issue of material fact is genuine if a reasonable jury could return a verdict for the nonmovant. Anderson v. Liberty Lobby, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In reviewing the evidence, this Court must draw all reasonable inferences in favor of the nonmoving party, and avoid credibility determinations and weighing of the evidence. Reeves v. Sanderson Plumbing Prods. Inc., 530 U.S. 133, 120 S.Ct. 2097, 2110, 147 L.Ed.2d 105 (2000). In so doing, the Court must disregard all evidence favorable to the moving party that the jury is not required to believe. Reeves, 120 S.Ct. at 2110.

I.      TERRY'S § 1981 CLAIMS.

42 U.S.C. § 1981 states as follows:

(a) Statement of equal rights
All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no

---

[1]The instant motion has been fully briefed by the parties. However, the Court feels compelled to note for the record that the plaintiffs' memorandum in response to the motion for summary judgment quite frankly borders on being incoherent, and the Court has experienced great difficulty in divining exactly what responsive arguments plaintiffs' counsel is making.

other.

(b) "Make and enforce contracts" defined
For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

(c) Protection against impairment
The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

42 U.S.C.A. § 1981.

There appear to be no Fifth Circuit cases directly on point which elucidate the elements of a § 1981 claim in the context of a student who has been expelled from a school in circumstances similar to the case at bar. The defendants therefore rely on Williams v. Lindenwood University, 288 F.3d 349, 355 (8th Cir. 2002) and Woods v. Miamisburg City Schools, 254 F.Supp. 2d 868, 876 (S.D. Ohio 2003) for the proposition that there is no contractual relationship between the plaintiffs and any of the remaining defendants and that the plaintiffs' § 1981 claim must fail as a result.

In Williams, the Eighth Circuit held that one who brings a § 1981 claim must first prove a prima facie case with three elements: (1) the plaintiff is a member of a racial minority, (2) the defendant intended to discriminate against the plaintiff on the basis of race, and (3) the discrimination concerned an area enumerated by the statute, i.e. a contractual relationship or benefits which flowed from such a relationship. Williams, 388 F.3d at 355.

Unquestionably, Terry Priester, Jr. is African-American, and given the posture of the case, the Court finds that there are just barely enough disputed facts concerning discrimination to preclude summary judgment. The question left to the Court is whether any contractual relationship existed to which Terry was a party and which was impaired by the alleged discrimination of the defendants.

4

No such contract is identified in the complaint, and the plaintiffs' response brief limits its discussion of this issue to the following two statements: "It is mere folly to allege that no contract exist [sic] between the school system and plaintiff. Not only is there a contractual relationship between the school and parents/students but the transfer itself was a contract." These statements are purely conclusory, and the plaintiffs cite no authority for the suggestion that the availability of public education is based on a contractual relationship, even when a school permits a student to transfer in from another district. See Wood, 254 F.Supp. 2d at 876 (noting that "the obligation to send one's children to school exists regardless of whether or not one pays taxes; the obligation to pay taxes arises, as Plaintiff herself admits, whether or not one has school-age children").

The Court agrees with the defendants that the plaintiffs have failed to prove a prima facie case under 42 U.S.C. § 1981. Summary judgment is therefore granted as to this claim.

II.     PRIESTER'S § 1983 CLAIMS.

The elements of a claim brought under 42 U.S.C. § 1983 are: (1) the deprivation of a right secured by the Constitution or laws of the United states which was (2) caused by a person acting under color of state law. Priester v. Lowndes County, 354 F.3d 414, 420 (5th Cir. 2004). While the complaint does not clearly identify the specific rights to which Terry was deprived, the Court notes that several rights are implicated in this case. First, Terry was deprived of his right to be free of violence when he was attacked by white students. Second, Terry was deprived of his due process rights when he was first suspended from school and then his transfer to the school was revoked. Third, Terry was deprived of his right to equal protection under the law when he was punished more harshly than white students. The Court will address each theory in turn.

A.     The right to be free from violence.

The Fifth Circuit adheres to the general rule that "the state's failure to protect an individual from private violence does not violate the Due Process Clause." Priester, 354 F.3d at 421. See also Deshaney v. Winnegago County Dep't of Social Servs., 489 U.S. 189, 195, 109 S.Ct. 998, 103 L.Ed.2d 248 (1989)(holding that "nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors").

As the plaintiffs note, however, there are three exceptions to the general rule of Deshaney which have been recognized by the courts: the "special relationship" exception; the "state-created danger" exception; and the "fair attribution standard." Priester, 354 F.3d at 421-423. None of these three exceptions have been raised in any meaningful way by the plaintiffs, who simply state that Deshaney is "not applicable" without further authority. Out of an abundance of caution, however, the Court will address the applicability of these three exceptions. First, the "special relationship" exception "only arises when a person is involuntarily confined or otherwise restrained against his will pursuant to a governmental order or by the affirmative exercise of state power." Id. at 421 (quoting McKinney v. Irving Independent School District, 309 F.3d 308, 313 (5th Cir. 2002). The Fifth Circuit has expressly rejected the argument that a special relationship arises when a student is injured in the context of a voluntary, after-school, extra-curricular activity such as football practice or games. Priester, 354 F.3d at 422 ("[The plaintiff's] injury occurred after regular school hours during football practice, and thus, at the time his injuries occurred, no special relationship existed between him and the school").

The state-created danger exception requires the plaintiff to show that (1) the state actors created or increased the danger to the plaintiff, and (2) the state actors acted with deliberate indifference. Id. at 423 (noting that Fifth Circuit had neither adopted nor rejected state-created

6

danger theory). Nothing in the complaint or the responsive brief supports the implication that any of the remaining defendants created or increased the danger of Terry being assaulted by fellow students in a locker room after a football game.

Under the "fair attribution" test, private action may be deemed state action when a private defendant's conduct is "fairly attributable to the State," which can be proven by a plaintiff demonstrating (1) that the deprivation was caused by the exercise of some right or privilege created by the state or by a rule of conduct imposed by the state, or by a person for whom the state is responsible, and (2) that the party charged with the deprivation may be fairly said to be a state actor. Priester, 354 F.3d 423 (holding that "[a] party may fairly be said to be a state actor only when 'he has acted with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State'"). The record reflects no evidence supporting the implication that Fremin and Grant were acting in the capacity of state actors when they allegedly attacked Terry. In fact, the Court has already granted Fremin and Grant summary judgment for precisely those reasons. Accordingly, to the extent that § 1983 liability is premised on the initial attack on Terry by Fremin and Grant, summary judgment is granted to the remaining defendants.

For the record, the Court notes that Terry, in his deposition testimony, accuses one of the defendants, Coach John Patton, of shoving him up against a wall as part of Patton's efforts to separate him from Fremin and Grant. Coach Patton categorically denies shoving Terry and in fact claims that Terry twice shoved him, which was part of the reason for the School District's revocation of Terry's transfer. While there are clearly disputed issues surrounding this particular altercation and while Coach Patton is clearly a state actor, the Court finds that this alleged assault on Terry is not relevant to the instant lawsuit, which brings claims only for discrimination and denial of due process.

Nothing in the complaint raises any claim against Coach Patton for allegedly assaulting Terry.

      B.    Equal Protection.

The complaint also argues that Terry's rights were violated when he was punished after the attack with expulsion from the football team and from the school while Fremin and Grant, who were white students, were not similarly punished, which the Court interprets to be a claim for violation of Terry's rights under the Equal Protection Clause of the 14th Amendment. In fact, it appears undisputed that the official basis for Terry's expulsion consisted of three factors: Terry's refusal to comply with direct orders from Coach Patton which were intended to prevent further violence between Terry and other students, Terry's alleged actions in shoving Coach Patton, and Terry's alleged utterances of what Coach Patton claims were threats to kill students.

The Court finds that there are disputed issues of fact surrounding Terry's expulsion which preclude summary judgment, including but not limited to: (1) whether Terry refused to comply with Coach Patton's instructions to remain in an office instead of leaving to seek a confrontation with other students, (2) whether Terry shoved Coach Patton, and (3) whether Terry threatened to kill other students. If the jury concludes that Terry performed any or all of these alleged acts, Terry will obviously be unable to prove that he was punished differently from white students in similar circumstances, since no white students are alleged to have committed any of these infractions. However, ultimately, these issues must be resolved by the jury.

That said, the Court notes that the ultimate decision to expel Terry was made by the School District through the actions of the School Board. As such, Terry's claims against the District were properly brought by identifying Superintendent Box in his official capacity. There is nothing in the record suggesting that the other defendants, including Principal Clark and the seven coaches and

assistant coaches, played any role in Terry's expulsion, either individually or in their official

capacities. Accordingly, summary judgment is granted to all defendants except for the Starkville

School District.

C.     Due Process.

The Court also interprets Terry's § 1983 claim to allege that his rights under the Due Process

Clause of the 14th Amendment were violated. In fact, the January 29, 2002 Order entered by

Oktibbeha County Chancellor James Gore intimated that Terry's Due Process rights were in fact

violated by the School Board's decision to revoke his transfer to Starkville High School without first

granting him a hearing and the right to be heard. The Court is unsure at this stage what the impact

of Chancellor Gore's order will be at trial or whether it will have any res judicata effect. However,

at a minimum, there are disputed issues of fact which preclude the grant of summary judgment on

any Due Process claims Terry might have. Accordingly, summary judgment is denied.

As with Terry's § 1983 Equal Protection claim, however, the ultimate decision to revoke

Terry's transfer was made by the School Board. Accordingly, summary judgment is granted to the

individual defendants, none of whom were responsible for the revocation.

III.    PRIESTER'S § 1985 and § 1986 CLAIMS.

While 42 U.S.C. § 1985 governs three different types of race-based claims, the only part of

the statute relevant to the case at bar is § 1985(3). 42 U.S.C. § 1985. The Fifth Circuit has

articulated the following criteria for a § 1985(3) claim:

> To state a claim under 42 U.S.C. § 1985(3), a plaintiff must allege: (1) a conspiracy
> involving two or more persons; (2) for the purpose of depriving, directly or
> indirectly, a person or class of persons of the equal protection of the laws; and (3) an
> act in furtherance of the conspiracy; (4) which causes injury to a person or property,
> or a deprivation of any right or privilege of a citizen of the United States. In so

doing, the plaintiff must show that the conspiracy was motivated by a class-based animus.

Hilliard v. Ferguson, 30 F.3d 649, 652 -653 (5th Cir. 1994). As the defendants note, nothing in either the complaint or the response to the instant motion supports the implication that the defendants conspired in any way within the meaning of § 1985. Accordingly, summary judgment is appropriate.

Furthermore, a viable § 1985 claim is a prerequisite to maintaining a § 1986 claim. Von Eschen v. League City Texas, 233 F.3d 575, (5th Cir. 2000). Accordingly, summary judgment is granted with regard to Terry's § 1986 claim as well.

V.      PRIESTER'S TITLE VI CLAIMS.

Terry's Title VI claims are derived from 42 U.S.C. § 2000(d) which states: "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000(d). In order to prove a claim under Title VI, the plaintiff must show: (1) that there is racial discrimination and (2) that the entity engaging in discrimination is receiving federal financial assistance. Baker v. Board of Regents of State of Kan., 991 F.2d 628, 631 (10th Cir. 1993). Consequently, any Title VI claims against the individual defendants must fail, as the Starkville School District is the only defendant which receives federal assistance. In fact, the defendants argue that even the school district should be dismissed because the plaintiffs failed to allege in either the Complaint or the Amended Complaint that the district is a recipient of federal aid, citing Booker v. Board of Education, Baldwinsville Central School District, 238 F.Supp. 2d 469, 474 (N.D. N.Y. 2002). The Court is loathe to dismiss a claim for such a technical reason, however, and notes that, even in the Booker case cited by the defendants, the court

10

dismissed the plaintiff's Title VI claim against the defendant school district with leave to re-plead

in accordance with the requirements of Title VI. Accordingly, in the interests of justice and fairness,

the Court dismisses the plaintiffs' Title VI claim against the school district but will permit the

plaintiffs to amend their complaint to properly plead that the Starkville School District is a recipient

of federal funds within 30 days of the entry of the order accompanying this opinion. Failure to

timely amend said complaint will constitute abandonment of this claim.

## CONCLUSION

Based on the foregoing analysis, the Court rules as follows:

1.  The defendants' motion is DENIED to the extent it seeks summary judgment on behalf of the Starkville School District for the plaintiffs' claims under 42 U.S.C. § 1983 which are premised on racial discrimination against Terry Priester, Jr. and violation of his right to due process.

2.  The defendants' motion for summary judgment is otherwise GRANTED with regard to all claims other than the aforementioned § 1983 claims and to all individual and official capacity claims against named Principal Leon Clark and Coaches Bill Lee, Spence Rodman, Coach John Patton, Coach Tate Fischer, Coach Tony Buckhalter, Coach Bill Cook and Coach Danny Carlisle.

3.  Notwithstanding the previous paragraph, the plaintiffs shall have 30 days from the entry of the order accompanying this opinion in which to amend their complaint for the sole purpose of averring that the Starkville School District is a recipient of federal funds. Such an amendment shall act to revive the plaintiffs' claim against the School District under Title VI provided that the amendment is timely. Failure to so amend the complaint within 30 days shall constitute waiver of the plaintiffs' Title VI claim.

A separate order to that effect shall issue this day.

This is the 26th day of September, 2005.


         **/s/ Michael P. Mills**
         **UNITED STATES DISTRICT JUDGE**